2021 IL App (1st) 190434-U

THIRD DIVISION
December 8, 2021

No. 1-19-0434

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 02 CR 5304 |
| | ) | |
| TERRENCE SPARKS, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's denial of defendant's petition for postconviction relief was not manifestly erroneous where defendant failed to make a substantial showing that (1) his trial counsel was ineffective for failing to request a jury instruction for defense against a forcible felony and appellate counsel was ineffective for failing to raise this claim on direct appeal; and (2) trial counsel was ineffective for failing to advise defendant regarding the instruction for second degree murder without explaining the sentencing range for second degree murder.

¶ 2    Defendant Terrence Sparks appeals from the trial court's denial of postconviction relief following a third stage evidentiary hearing. Specifically, defendant argues that the trial court erred in denying his petition for postconviction relief because (1) his trial counsel was ineffective for failing to request a jury instruction stating that a person is justified in the use of deadly force to prevent the commission of a forcible felony and appellate counsel was ineffective for failing to raise the issue on direct appeal; and (2) trial counsel was ineffective for advising defendant to decline an instruction on second degree murder without advising defendant of the disparate sentencing ranges for first degree murder and second degree murder.

¶ 3    Following a jury trial, defendant was found guilty of first degree murder in the January 2002 homicide of Maurice Fowler.  Defendant was subsequently sentenced 35 years for first degree murder with a 25-year enhancement for use of a firearm in the commission of the crime, for a total of 60 years in prison. As this is defendant's fifth appeal, we will discuss only those facts relevant to defendant's postconviction petition.  A more detailed discussion of the evidence presented at defendant's trial can be found in his direct appeal.  *People v. Sparks*, No. 1-04-3288 (December 11, 2006) (unpublished order under Supreme Court Rule 23).

¶ 4    The following evidence was presented at defendant's jury trial.

> "Israel Medina testified at trial that in the early hours of January 26, 2002, he and Fowler were eating food on Medina's porch, located at 1406 North Kildare in Chicago.  While they were there, Medina heard a car pull up and a door slam across the street, near a big apartment building located at 4258 West Hirsch.
>
> Medina and Fowler walked to the grocery store at the corner of Hirsch and Kildare and looked to see who was yelling, but they did not see anyone.  They turned and started to walk back to Medina's house.  When they reached the front

gate, they heard yelling again. They turned and saw the same person yelling across the street. The person was yelling, "What's up?" in their direction. Fowler called out, "Who is that?" The person repeated, "Who is that?" back to Fowler. At that point, Fowler crossed the street and Medina followed.

Medina stated that they crossed the street because they thought the person yelling might be one of their friends. When they crossed the street, Medina got within two feet of this person, whom he identified as defendant. Medina said that defendant was wearing a black pea coat, dark gray pants, and a gray sweatband with a Nike symbol on it.

When they got close to defendant, defendant started to say, "What's up?" again. Medina realized he did not know defendant and had never seen him before that night. Medina asked Fowler if he knew defendant and Fowler stated that he did not. Medina told defendant, "Man, my fault, you know. I thought we knew you." Medina then started to step back from defendant. Medina then tripped on a broken piece of sidewalk and fell backwards. At that moment, defendant pulled a gun out of his coat pocket and fired.

Neither Medina nor Fowler was hit by the first shot. Medina got up and ran to hide behind a car. Defendant fired a second shot as Medina ran to hide. He turned back and saw Fowler standing with his hands up in the air. Defendant started to walk toward Fowler and Fowler began to back up. Fowler then tripped over a small chain link fence and fell onto his back. Medina saw defendant hit Fowler in the face with the gun. Fowler had his hands up to block defendant. Defendant then stood up and fired a shot into Fowler. Medina saw Fowler's

3

hands fall to his sides. He saw defendant fire two more shots into Fowler. Defendant looked around and then walked into the apartment building.

Defendant, testifying on his own behalf, described different circumstances. He arrived at 4258 West Hirsch at 4 a.m. He parked the car in front of the building and started to walk toward the building door. He then noticed two men coming toward him.

Defendant said he did not know the two men who approached him. He stated that one of the men was wearing a black hooded sweatshirt and had his hands in the pocket. That man ordered defendant to take his hands out of his pocket. The other man was just standing next to him. The man in the sweatshirt then demanded that defendant give him his keys. Defendant did not know if he meant house keys or car keys.

Defendant then saw that the man with the hooded sweatshirt had a gun. Defendant rushed him. The man tripped over a chain. Both men fell over and start fighting for the gun. Defendant did not pay attention to the second man. Defendant said both of his hands were on the gun. Defendant does not know how many times the gun went off. After the gunshots stopped, defendant dropped the gun and ran to his apartment.

On cross-examination, defendant said he did not remember everything that happened. He did not know if the other man was shot after the first gunshot was fired. Defendant stated that the gunshots were all fired in rapid succession. Defendant admitted that he did not call the police after the shooting to report the

4

attempted robbery and struggle. Defendant said he left the gun at the scene when he left.

Dr. Edmond Donoghue testified that he is the chief medical examiner for Cook County. He stated that he did not perform the autopsy on Fowler, but he read and is familiar with the case file. The medical examiner who performed the autopsy was no longer employed with Cook County.

There were four gunshot wounds to Fowler. The first wound was an entrance wound in the left lower abdomen involving the small intestine and the inferior vena cava, which is the largest vein in the body, and the left iliac artery, which is a large blood vessel. A deformed, medium-caliber copper bullet was recovered from the muscle of the left lower back, just above the left buttock. This wound caused massive bleeding and coursed from front to back and slightly downward. The second wound was a gunshot entrance wound to the left lower back which exited the body on the left upper quadrant of the abdomen. The third wound entered the back of the hand and exited the palm. The final gunshot wound was through the base of the left thumb.

There was no evidence of close-range firing for any of these wounds. Close-range firing is less than 18 inches away. The victim's stomach was empty. The toxicological tests showed no signs of drugs, but the victim's blood-alcohol level was just below twice the legal limit. His wounds were consistent with someone on the ground with his hands in the air and being shot from above. It is possible that one of the bullets traversed the hands and entered the body, making it consistent with three gunshots. There was nothing in the report indicating any

5

bruises or lacerations on the head, but it is possible that an individual could be struck right before he died and there would be no bruises. Dr. Donoghue stated that the cause of death was multiple gunshot wounds and that manner of death was a homicide." *People v. Sparks*, 393 Ill. App. 3d 878, 879-81 (2009).

¶ 5 On direct appeal, defendant argued that (1) the trial court improperly allowed testimony regarding Medina's prior consistent statements to the police, which served to bolster Medina's credibility and denied defendant a fair and impartial trial; and (2) the State engaged in prosecutorial misconduct during closing and rebuttal arguments by implying that defendant and his trial counsel fabricated his defense and commenting on defendant's invocation of his right to remain silent. This court affirmed defendant's conviction and sentence. See *Sparks*, No. 1-04-3288 (December 11, 2006) (unpublished order under Supreme Court Rule 23).

¶ 6 In September 2007, defendant mailed his *pro se* postconviction petition to the circuit court, alleging multiple claims including (1) a violation of his confrontation rights when Dr. Donoghue testified about Fowler's autopsy report that was prepared by a different medical examiner, and his trial and appellate counsel were ineffective for failing to object to this violation; (2) actual innocence based on an affidavit from an uninvolved occurrence witness stating that she witnessed the shooting and saw Medina and Fowler attempt to rob defendant; and (3) the State improperly withheld evidence of defendant's innocence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to disclose the witness who stated she spoke to police the night of the shooting. In November 2007, the trial court dismissed defendant's petition at the first stage of postconviction proceedings.

¶ 7 Defendant appealed, and this court reversed the dismissal of his postconviction petition at the first stage, finding that defendant presented the gist of a meritorious claim of actual

innocence. We did not reach the remaining claims because partial summary dismissals are not permitted under the first stage of postconviction proceedings. *Sparks*, 393 Ill. App. 3d at 886-87. We remanded for further proceedings under the Illinois Post-Conviction Hearing Act (Post-Conviction Act) (725 ILCS 5/122-1 *et seq.* (West 2018)).

¶ 8       On remand, an assistant public defender was assigned to represent defendant. In July 2014, defendant filed a supplemental postconviction petition asserting two additional claims: (1) trial counsel was ineffective for advising defendant to forego a second degree murder instruction without informing defendant of the disparate sentencing ranges for first degree and second degree murder; and (2) trial counsel was ineffective for failing to request a jury instruction regarding the use of deadly force to prevent the commission of a forcible felony and appellate counsel was ineffective for failing to raise this issue on direct appeal. An affidavit from defendant was attached to the supplemental petition, stating that his trial counsel failed to inform him that second degree murder carried a sentencing range of 4 to 20 years, with day-for-day credit. Defendant stated that if he knew of the lower sentence for second degree, then he would have requested the instruction on second degree murder. The State subsequently moved to dismiss defendant's supplemental petition. After a hearing on the motion to dismiss, the trial court granted the State's motion and dismissed defendant's postconviction petition.

¶ 9       Defendant appealed the trial court's dismissal and argued that he made a substantial showing of actual innocence and ineffective assistance of trial and appellate counsel. This court affirmed the dismissal of defendant's *Brady* claim, but reversed and remanded defendant's claims of actual innocence and ineffective assistance of trial and appellate counsel for an evidentiary hearing. *People v. Sparks*, 2017 IL App (1st) 143795-U, ¶ 52.

¶ 10    Regarding defendant's claim of ineffective assistance of trial counsel for failure to request a jury instruction which stated that a person is justified in the use of deadly force to prevent the commission of a forcible felony, we found that defendant had:

> "made a substantial showing that it was objectively unreasonable for his trial counsel to fail to request the giving of IPI 24-25.06 as it related to the commission of a forcible felony when the evidence presented supported the instruction. Additionally, given the nature of the evidence presented, with conflicting accounts of the shooting, defendant has made a substantial showing that he was prejudiced by his attorney's failure to request this jury instruction informing the jury of another basis for self-defense, such that was a reasonable probability that the results of the trial would have been different if the instruction had been given." *Id.* ¶ 36.

¶ 11    We similarly found that defendant made a substantial showing that his appellate counsel was ineffective for failing to raise this claim on direct appeal. We observed that the claim was apparent in the record because defendant's posttrial attorney had raised the ineffective assistance claim in defendant's motion for a new trial. We held that:

> "the closely balanced nature of the case along with the record support makes a substantial showing that counsel was objectively unreasonable for failing to raise this preserved issue on direct appeal. Further, based on the facts of this case, defendant has made a substantial showing that there was a reasonable probability that the results of his direct appeal would have been different, and he would have received a new trial." *Id.* ¶ 37.

¶ 12    We also concluded that defendant had made a substantial showing that his trial counsel

had failed to inform defendant about the sentencing range for second degree murder. We

observed that the second stage of postconviction proceedings, we were to accept defendant's

statements in his affidavit as true and not engage in any credibility determinations. *Id.* ¶ 46.

Thus, we assumed trial counsel failed to inform defendant of sentencing range for second degree

murder, we found that defendant had made a substantial showing that his attorney's performance

fell below an objective standard of reasonableness. *Id.* ¶ 46. We further found that defendant "set

forth a substantial showing that there [was] a reasonable probability that result of the trial would

have been different if the jury had received a second degree murder instruction." *Id.* ¶ 51.[1]

¶ 13    On remand, defendant withdrew his actual innocence claim prior to the evidentiary

hearing. In December 2018, the trial court conducted a third stage evidentiary hearing on the two

claims of ineffective assistance and the following evidence was presented.

¶ 14    Melinda Grace Palacio was called as a witness by defendant. She was employed as an

assistant public defender with the Office of the State Appellate Defender. In 2004, she was

assigned to represent defendant in his direct appeal. She raised two issues in the brief filed in the

appeal: (1) the improper admission of a prior inconsistent statement; and (2) prosecutorial

misconduct regarding statements during closing argument. This court affirmed defendant's

conviction.

¶ 15    As part of her practice, she reviewed the motion for a new trial filed by defendant's

posttrial attorney. In the motion, posttrial counsel raised the issue of the failure to request a jury

---

[1]    While this appeal was pending, defendant filed an appeal from the trial court's dismissal of his section 2-1401 petition in which he asserted that his 25-year firearm enhancement was void. On appeal, his attorney filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). This court granted counsel's motion and affirmed the trial court's judgment. *People v. Sparks*, No. 1-16-0584 (2018) (unpublished summary order under Supreme Court Rule 23).

instruction on the use of force to defendant against a forcible felony. Palacio did not raise the issue in her brief and could not recall the exact reasoning why it was not raised.

¶ 16    In her handwritten notes on the record, Palacio noted that the trial court erred in not instructing the jury that defendant was justified in the use of force. She had an issue conference with her supervisor and this issue was discussed. She did not recall a dispute between her and her supervisor as to whether this issue was meritorious. She explained that if she and her supervisor disagreed on an issue, she would write a memo explaining why she thought it had merit, but she did not write a memo in this case, which indicated that she and her supervisor agreed the forcible felony issue was not meritorious. Palacio did not believe the issue would be successful on direct appeal.

¶ 17    Palacio also discussed the issues she wanted raise on direct appeal with defendant. She did not recall whether defendant indicated to her that he wanted to raise the issue of the forcible felony instruction on direct appeal.

¶ 18    Defendant testified on his own behalf. He retained Tod Urban as a private attorney to represent him through the trial. He discussed the case with Urban in person. According to defendant, Urban made "probably two jail visits" and the rest of the conversations occurred during court appearances in the "bullpen" or lockup area. The conversations in court lasted approximately 5 to 10 minutes. They discussed defendant's testimony.

¶ 19    Urban discussed second degree murder with defendant after defendant's testimony at trial in the "bullpen." The conversation lasted 5 to 10 minutes. Urban told defendant that the State was willing to give defendant a second degree murder instruction. Defendant testified that Urban did not explain what the sentence was for second degree murder. Defendant asked counsel for his opinion about what to do and Urban advised defendant that he "should go self-defense or first

degree." According to defendant, Urban told him that if he gave the jury the second degree murder instruction, then they would likely find him guilty of second degree murder. Urban thought defendant "could beat [the charges] overall." Defendant decided not to instruct the jury on second degree murder. This was the only conversation Urban had with defendant regarding second degree murder.

¶ 20    After defendant's trial testimony, the trial court asked defendant if it was true that he did not want the second degree instruction, and defendant said yes. The court did not state the sentencing range for second degree murder. Defendant testified that he now knew the sentencing range for second degree murder was 4 to 20 years, to be served at 50%. If he had known the sentencing range at the time of the trial, defendant would have wanted the instruction.

¶ 21    On cross-examination, defendant agreed that he did not contest shooting Fowler and he wanted the defense of self-defense. He testified at trial that he was protecting himself and he believed he did not do anything wrong. Defendant admitted that he was present for the jury instruction conference and listened to the trial court with regard to the instructions. Defendant testified that he learned what "all or nothing" meant in regard to self defense in the bullpen, but did not know what that meant before trial. When the trial court asked if this was an "all or nothing," defendant agreed that he knew what the term meant. When asked if it was his decision whether to instruct the jury on second degree murder, defendant responded that he listened to the advice of his attorney. Defendant said the issue was raised in his motion for a new trial by his new posttrial attorney.

¶ 22    Tod Urban was called by the State. He previously worked at the Cook County Public Defender's Office from 1984 to 1989. He then started his own private practice for criminal defense. He estimated that he conducted between 100 and 150 murder trials. He represented

defendant in 2002 during pretrial and trial. Urban did not have his trial file in this case because it had been destroyed. He remembered "a little" about the case. Urban was "certain" that he discussed trial strategy with defendant, and he probably met with defendant several times at the jail.

¶ 23    Urban would not have discussed trial strategy while in court and defendant was in the lockup because "there's lots of ears back there." He explained, "You try not to say too much about the case." He would discuss what was going to happen that day.

¶ 24    While he did not remember specifics of this case, Urban testified that it was his practice to discuss first degree murder and second degree murder with a defendant because there is a "huge difference" in sentencing. He filed an answer in the case indicating that they might use the defense of self-defense, which defendant agreed. Urban stated that he would have talked about second degree murder with regard to this case. He reviewed the transcript of the jury instruction conference and noted that defendant was present. He would have reviewed the instruction with defendant. As far as he knew, he would have discussed the second degree murder instruction, but he had no independent recollection.

¶ 25    Urban would have discussed second degree options with a client if the circumstances warranted it. He further explained, "Certainly if it's case where there's self-defense then, yes, you always look at second degree." According to Urban, it was usually his client's decision to ask for a second degree instruction because "he's the one that's looking at the time." If the client said he or she did not want a second degree instruction, then Urban could not make he or she "take a second degree." He would have discussed the differences between first degree and second degree in order for the client to make that decision.

¶ 26    In this case, defendant did not want the second degree murder instruction. If he recalled correctly, defendant told him that he did not do it and he was not "taking a second degree for something he didn't do. He was going to go for it as he told the judge." Urban denied that he ever told defendant that he could "beat the case." He never promised a defendant that he or she could "beat a case."

¶ 27    On cross-examination, Urban acknowledged a photocopy of the front of his file in defendant's case which noted a jail visit on October 8, 2002. Urban stated that was the only time the jail visit was written, but he often did not write it down. Urban admitted that he did not know the dates that he visited defendant in jail. When asked if he any independent recollection of the case after reading the transcript, Urban responded that he recognized the name, but "that's about as far as [he] got."

¶ 28    In February 2019, the trial court entered its written decision denying defendant's petition for postconviction relief and reviewed its findings on the record. Regarding the ineffective assistance claim about the forcible felony instruction, the court found that trial counsel was unreasonable for failing to request the instruction. Specifically, the court reasoned that the additional instruction for the defense against a forcible felony was based on the same testimony that supported a self-defense instruction and "such an instruction could have only helped [defendant] by giving the jury an alternate basis to find he acted in self-defense."

¶ 29    However, the court concluded that defendant was not prejudiced by counsel's failure to request the instruction. The court found defendant's testimony was inconsistent and his credibility was weak. The jury heard this testimony and rejected his claim of self-defense. "Because the jury did not accept [defendant's] version of events, there is not a reasonable probability that the jury would have acquitted him had they received the alternative forcible

felony instruction for self-defense as the evidence was not closely balanced."

¶ 30    As for the ineffective assistance of appellate counsel for failing to raise this claim, the court found counsel's decision not to raise the issue "problematic because the issue was not meritless." But the court held that defendant "suffered no prejudice from appellate counsel's decision because there was not a reasonable probability that the issue would have changed the outcome on direct appeal."

¶ 31    The trial court then considered defendant's second claim of ineffective assistance based on trial counsel's alleged failure to advise defendant of the sentencing range for second degree murder. The court initially observed that based on recent case law, the claim is not cognizable because a defendant does not have a right to decide whether to tender a second degree murder instruction. See *People v. Wilmington*, 2013 IL 112938, ¶ 48 (finding second degree murder is not a lesser included offense of first degree murder, but rather is a lesser mitigated offense); *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 76-80 (finding that the defendant did not have the right to decide whether he wanted the second degree murder instruction, and thus, counsel's advice "was of no moment").

¶ 32    The trial court further acknowledged that defendant's trial occurred before both *Wilmington* and *Zareski*, and rejected the claim on its merits. The court did not find defendant's testimony credible that his trial counsel only discussed second degree murder with him on the last day of the trial and never informed him of the sentencing range. The court also did not find defendant's assertion that he would have wanted the second degree instruction credible. The court found it probable that Urban would have informed defendant of the sentencing range based on counsel's testimony based on his usual practice. Additionally, the court did not find it likely that the jury would have found defendant guilty of second degree murder instead of first degree

murder based on the same reasons the court noted in its forcible felony instruction discussion. Based on these findings, the trial court denied defendant's petition for postconviction relief.

¶ 33    This appeal followed.

¶ 34    The Post-Conviction Act provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. 725 ILCS 5/122-1(a) (West 2018); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is limited to constitutional deprivations that occurred at the original trial. *Id.* at 380.  "A proceeding brought under the [Post-Conviction Act] is not an appeal of a defendant's underlying judgment. Rather, it is a collateral attack on the judgment." *People v. Evans*, 186 Ill. 2d 83, 89 (1999). "The purpose of [a postconviction] proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." *People v. Barrow*, 195 Ill. 2d 506, 519 (2001).

¶ 35    "Throughout the second and third stages of a postconviction proceeding, the defendant bears the burden of making a substantial showing of a constitutional violation." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). When a postconviction petition is advanced to the third stage, the circuit court conducts an evidentiary hearing.  725 ILCS 5/122-6 (West 2018). At an evidentiary hearing, "the circuit court serves as the fact finder, and, therefore, it is the court's function to determine witness credibility, decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts." *People v. Domagala*, 2013 IL 113688, ¶ 34. Since the trial court makes factual and credibility determinations, the court's decision will not be reversed unless it is manifestly erroneous. *People v. English*, 2013 IL 112890, ¶ 23. " 'Manifest error' is error which is clearly plain, evident, and indisputable." *People v. Taylor*, 237 Ill. 2d 356, 373

(2010). However, if no factual determinations are necessary at the third stage, *i.e.,* no new evidence is presented and the issues presented are pure questions of law, we review the trial court's finding under the *de novo* standard, unless the judge presiding over postconviction proceedings has some "special expertise or familiarity" with the trial or sentencing of the defendant and that "familiarity" has some bearing upon disposition of the postconviction petition. *Pendleton*, 223 Ill 2d. at 473.

¶ 36    Defendant argues on appeal the trial court's finding that he failed to establish ineffective assistance of trial counsel by a preponderance of the evidence was manifestly erroneous.

¶ 37    Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).   In *Strickland*, the Supreme Court delineated a two-part test to use when evaluating whether a defendant was denied the effective assistance of counsel in violation of the sixth amendment.   Under *Strickland*, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced defendant.  *Strickland*, 466 U.S. at 687.  To demonstrate performance deficiency, a defendant must establish that counsel's performance fell below an objective standard of reasonableness.  *People v. Edwards*, 195 Ill. 2d 142, 163 (2001).

¶ 38    "A defendant is entitled to reasonable, not perfect, representation, and mistakes in strategy or in judgment do not, of themselves, render the representation incompetent." *People v. Fuller*, 205 Ill. 2d 308, 331 (2002). "In recognition of the variety of factors that go into any determination of trial strategy, courts have held that such claims of ineffective assistance of counsel must be judged on a circumstance-specific basis, viewed not in hindsight, but from the time of counsel's conduct, and with great deference accorded counsel's decisions on review."

*Fuller*, 205 Ill. 2d at 330-31 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Strickland*, 466 U.S. at 689).

¶ 39    In evaluating sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  If a case may be disposed of on the ground of lack of sufficient prejudice, that course should be taken, and the court need not ever consider the quality of the attorney's performance. *Strickland*, 466 U.S. at 697.

¶ 40    A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts demonstrating such failure was objectively unreasonable and that counsel's decision prejudiced defendant. *People v. Rogers*, 197 Ill. 2d 216, 223 (2001). Appellate counsel is not obligated to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in his or her judgment, are without merit, unless counsel's appraisal of the merits is patently wrong. *People v. Simms*, 192 Ill. 2d 348, 362 (2000). Thus, the inquiry as to prejudice requires that the reviewing court examine the merits of the underlying issue, for a defendant does not suffer prejudice from appellate counsel's failure to raise a nonmeritorious claim on appeal. *Id*. Appellate counsel's choices concerning which issues to pursue are entitled to substantial deference. *Rogers*, 197 Ill. 2d at 223.

¶ 41    Defendant first contends that he made a substantial showing that his trial counsel was ineffective for failing to request a jury instruction regarding the justification of using deadly force to prevent the commission of a forcible felony and there was a reasonable probability that he would have been acquitted if the jury received this instruction. He further asserts that he set forth a substantial showing that his appellate counsel was ineffective for failing to raise this

17

claim in his direct appeal.

¶ 42    A defendant is entitled to an instruction on his theory of the case if there is some foundation for the instruction in the evidence ***." *People v. Jones*, 175 Ill. 2d 126, 131-32 (1997). "Very slight evidence upon a given theory of a case will justify the giving of an instruction." *Id.* It is well settled in Illinois that a trial counsel's choice of jury instructions, as well as the decision to rely on one theory of defense to the exclusion of others, is a matter of trial strategy. *People v. Sims*, 374 Ill. App. 3d 231, 267 (2007). "Accordingly, counsel's decision as to which jury instruction to tender can support a claim of ineffective assistance of counsel only if that choice is objectively unreasonable." *Id.*

¶ 43    Illinois Pattern Jury Instruction (IPI) 24-25.06 states:

> "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend [(himself) (another)] against the imminent use of unlawful force.
>
> [However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent [(imminent death or great bodily harm to [(himself) (another)]) (the commission of _____)].]" Illinois Pattern Jury Instructions, Criminal, No. 24-25.06 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 24-25.06).

¶ 44    The committee note states: "When applicable, insert in the blank the forcible felony." Committee Note to IPI Criminal 4th No. 24-25.06. Both armed robbery and aggravated battery are forcible felonies. See 720 ILCS 5/2-8 (West 2016). The trial court provided IPI 24-25.06 to the jury, as it related to the use of force to prevent imminent death or great bodily harm to

defendant. Trial counsel did not request IPI 24-25.06 be given as it related to prevent the commission of a forcible felony, and the trial court did not instruct the jury on this basis.

¶ 45    In its written decision, the trial court observed that defendant's trial testimony disclosed that Fowler approached him, drew a gun, and demanded defendant's keys. Defendant then rushed Fowler and the gun fired during a struggle. The court found that defendant's account described an attempted armed robbery by Fowler, which qualified as a forcible felony. The court found that the additional instruction for defense against a forcible felony would have only helped defendant and trial counsel's failure not to request the instruction was objectively unreasonable.

¶ 46    However, the trial court concluded that defendant was not prejudiced by counsel's failure to request the instruction. The court reasoned that defendant's "credibility and inconsistency with other evidence [were] not relevant as to whether he was entitled to the instruction but [were] highly relevant as to whether the jury would have found in his favor." The court then recounted the inconsistencies in defendant's testimony, including that he initially denied being at the scene and knowing anyone who lived there. When defendant was confronted by police with Medina's account, defendant indicated that the shooting did not happen as described by Medina, but he told police he was "fuzzy" and too high to provide an explanation. The trial court further noted that other evidence contradicted defendant's testimony, including medical evidence that the shots were not fired at close range.

¶ 47    Significantly, the trial court reasoned that defendant's "account for how Fowler threatened him with deadly force and how Fowler tried to rob him were factually inextricable. Because the jury did not accept [defendant's] version of events, there is not a reasonable probability that the jury would have acquitted him had they received the alternative forcible felony instruction for self-defense as the evidence was not closely balanced." Based on this

conclusion, the court held that defendant failed to make a substantial showing of ineffective assistance of trial counsel.

¶ 48    Defendant contends that the trial court should not have revisited our holding on this issue from the second stage of review and this court should uphold our prior findings. We previously considered this claim at the second stage of postconviction proceedings and found that defendant had sufficiently established a substantial showing of ineffective assistance of trial counsel for failing to request the forcible felony portion of IPI No. 24-25.06 to warrant a third stage evidentiary hearing. However, our review of the second stage proceedings was under a different standard and with an actual innocence claim pending as well. During the second stage, we were to take all of defendant's supporting evidence as true, which included an affidavit from an uninvolved eyewitness that corroborated defendant's self-defense testimony. See *Pendleton*, 223 Ill. 2d at 473 ("At the second stage of proceedings, all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true"). Under that lens, we found the trial evidence alongside defendant's supporting postconviction evidence to be more closely balanced. However, the actual innocence claim was withdrawn prior to the evidentiary hearing and thus, that supporting evidence was no longer to be considered with defendant's claim at the evidentiary hearing. Accordingly, we reject defendant's assertion that the trial court at the evidentiary hearing was bound by our findings at the second stage of proceedings.

¶ 49    Turning back to the merits, we first consider whether defendant has made a substantial showing that he suffered prejudice due to his trial counsel's failure to request the forcible felony instruction. To make a substantial showing of the requisite prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

20

¶ 50    As the trial court observed, the evidence supporting the instruction for defense against a forcible felony was "factually inextricable" from the evidence supporting the provided instruction for defense against the imminent use of deadly force. Both are based on defendant's testimony that Fowler approached him, pulled a gun, and asked for defendant's keys. Defendant then rushed Fowler and during their physical struggle, the gun fired. However, the jury also heard Medina's testimony that defendant approached him and Fowler with a gun and fired at them. Medina further testified that Fowler fell and defendant stood over Fowler and shot him multiple times. In defendant's direct appeal, this court reviewed the trial evidence under a plain error analysis and observed that the bulk of the evidence, including forensic evidence, contradicted defendant's account.

> "Medina's eyewitness testimony of the shooting was corroborated by the physical evidence, specifically, the five bullet shells which were recovered, the blood from Fowler which was found on defendant's pants, and the defensive wounds on Fowler's hands.  Defendant's testimony did not correspond with the physical evidence.  For example, defendant stated that he and Fowler were struggling for the gun, but [the medical examiner] testified that the shots were not fired at close range.  Defendant was hazy about the number of shots fired.  Defendant also gave multiple accounts to the police after his arrest, none of which was self defense, and these versions of what happened differed from his testimony at trial." *Sparks*, No. 1-04-3288, at pp. 14-15.

¶ 51    Moreover, "[a] trial court's failure to instruct the jury on a self-defense theory based on the prevention of a forcible felony may be harmless if the trial court instructed the jury on similar defense theories." *People v. Jackson*, 304 Ill. App. 3d 883, 891-92 (1999). In *Jackson*, the

21

defendant appealed his murder convictions, arguing the trial court erred by refusing to instruct the jury "on the justifiable use of deadly force to prevent the forcible felony of criminal sexual assault." *Id*. at 889. Specifically, the defendant contended that the victim attempted to kiss him and the use of force was necessary to prevent a sexual assault. *Id*. 890. The reviewing court rejected the defendant's claim and found, in part, that any error was harmless. *Id*. at 892. The court reasoned:

> "[T]he [trial] court here rejected the defense request for a prevention-of-forcible-felony instruction, but it instructed the jury on a self-defense theory based on the justifiable use of deadly force to prevent imminent death or great bodily harm. In closing arguments, defense counsel argued that [the] defendant was justified in using force against the victim because of the victim's sexual advances. Therefore, the jury had ample opportunity to consider [the] defendant's theory of defense. When the jury rejected [the] defendant's self-defense claim, the jury considered the same evidence necessary to determine if [the] defendant acted reasonably in defending himself against an act of criminal sexual assault. [Citation.] Thus, because the jury was instructed on the theory of defense based on the justifiable use of deadly force and sufficiently considered [the] defendant's self-defense theory, any error was harmless. [Citation.]" *Id*.

¶ 52    Because the evidence to support the defense against a forcible felony instruction was also premised on defendant's account of the shooting, the jury would have to credit defendant's testimony over the State's evidence. However, the jury was instructed on self-defense based on defendant's account of the events and it rejected his version. The trial court found that defendant had not shown that there was a reasonable probability that the result of the trial would have been

different if the jury received the forcible felony instruction, and thus, he could not establish the requisite prejudice to support a claim of ineffective assistance of trial counsel. Based upon our review of the record, we cannot conclude that the trial court's finding on this issue was manifestly erroneous.

¶ 53   Defendant also asserted that his appellate counsel was ineffective for failing raise this claim on direct appeal. At the evidentiary hearing, appellate counsel testified that she did not recall why she chose not to raise the issue in her appellate brief, but since it was not raised, it suggested that she did not believe it had merit. She explained that she discussed what issues to present with her supervisor and identified her handwritten notes included this issue. If a dispute arose between her and her supervisor as to whether she believed an issue had merit, she would write a memo explaining her position. Since she did not prepare a memo in this case, appellate counsel testified that it suggested that there was no dispute about this issue.

¶ 54   Here, the trial court found appellate counsel's failure to raise this issue on direct appeal to be "problematic" because the issue "was not meritless." However, it also found that defendant was not prejudiced by appellate counsel's decision because defendant's claim of ineffectiveness of trial counsel was not established due to lack of prejudice. Therefore, since the trial court's finding that defendant failed to establish prejudice for the underlying claim of ineffective assistance of trial counsel was not manifestly erroneous, appellate counsel's failure to raise the nonmeritorious claim on appeal fails. See *Simms*, 192 Ill. 2d at 362 (a defendant does not suffer prejudice from appellate counsel's failure to raise a nonmeritorious claim on appeal).

¶ 55   Next, defendant argues that he made a substantial showing that his trial counsel was ineffective for failing to inform defendant of the sentencing range for second degree murder. According to defendant, if he had been properly advised of the sentencing range, then he would

have requested the instruction for second degree murder.

¶ 56    Second degree murder is committed when an individual commits first degree murder and one of the two mitigating factors is present: (1) the presence of an intense passion resulting from serious provocation by the victim, or (2) an unreasonable belief that self-defense is justified. 720 ILCS 5/9-2(a)(1), (a)(2) (West 2016). When one of these mitigating factors is presented, then the burden of proof is on the defendant to prove the mitigating factor by a preponderance of the evidence before the defendant can be found guilty of second degree murder. *Id.* The burden of proof, however, remains on the State to prove beyond a reasonable doubt each of the elements of first degree murder and, when appropriately raised, the absence of circumstances at the time of the killing that would justify or exonerate the killing. *Id.* Second degree murder is a Class 1 felony with a sentencing range of 4 to 20 years. 720 ILCS 5/9-2(d) (West 2016); 730 ILCS 5/5-4.5-30(a) (West 2016).

¶ 57    The supreme court held in *Wilmington* that second degree murder is not a lesser-included offense of first degree murder. *Wilmington*, 2013 IL 112938, ¶ 48. Rather, it is more accurately described as a lesser-mitigated offense of first degree murder. *Id.* "While a defendant who tenders a lesser-included offense instruction exposes himself to 'potential criminal liability, which he otherwise might avoid if neither the trial judge nor the prosecutor seeks the pertinent instruction' *** that is not the case with the tender of a second degree murder instruction ***." *Id.* (quoting *People v. Medina*, 221 Ill. 2d 394, 405 (2006)). In contrast, a defendant can only be found guilty of second degree murder if the State has first proven all the elements of first degree murder. *Id.* See also 720 ILCS 5/9-2(a) (West 2016). Thus, a defendant does not expose himself to potential criminal liability if the jury is instructed on the lesser-mitigated offense of second degree murder. *Id.*

¶ 58    In his supplemental postconviction petition, defendant asserted that his trial counsel was ineffective for failing to explain the sentencing range for second degree murder and had defendant known the lower sentencing range, he would have requested the instruction. However, the reviewing court in *People v. Zareski*, 2017 IL App (1st) 150836, *appeal denied* No. 122653 (Jan. 31, 2019), considered and rejected the same claim, relying on the supreme court's holding in *Wilmington*. We note that *Zareski* was issued after our order remanding defendant's claim for an evidentiary hearing. See *Sparks*, 2017 IL App (1st) 143795-U.

¶ 59    In *Zareski*, the defendant raised several claims in his postconviction petition, including a claim that his trial counsel was ineffective for failing to advise him of the sentencing ranges for first and second degree murder. *Zareski*, 2017 IL App (1st) 150836, ¶ 77. His petition was dismissed at the second stage of proceedings. *Id.* ¶ 1. The Second Division of this court found that the defendant's claim failed "at the outset as [the defendant] had no such right to decide whether he wanted the instruction. Without that right, whatever advice he did or did not receive from trial counsel was of no moment." *Id.* ¶ 77.

¶ 60    The *Zareski* court reviewed *Wilmington*'s holding that second degree murder is a lesser mitigated offense, not a lesser included offense.

> "Defendants who ask for a lesser-included instruction are exposing themselves to additional risk, akin to other risk-taking decisions like whether to take a plea or testify at trial. The decision is a personal one. But for second degree murder, there is no additional risk, and that puts this decision in the much bigger category of strategic choices to be made by the defense attorney. So, it was not [the defendant's] decision to make, and he did not have a right that needed to be waived." *Id.* ¶ 78.

25

The court concluded that since the defendant "did not have a personal right to decide whether he wanted a second-degree murder instruction, he was not actually 'waiving' any right, there was no 'unknowing waiver,' and his trial counsel did not provide ineffective assistance in advising him on the sentencing ranges." *Id.* ¶ 80.

¶ 61    Despite noting that the trial court relied on *Wilmington* and *Zareski* in its written opinion, defendant fails to discuss the import of these cases on his claim in his opening brief. However, he does, like the defendant in *Zareski*, cite *People v. Brown*, 2014 IL App (4th) 120887. In *Brown*, the Fourth District found that a defendant had the personal right to decide whether to tender a second degree murder instruction, but the reviewing court did not address *Wilmington*'s applicability. *Id.* ¶ 21. For this reason, the court in *Zareski* declined to follow the decision. *Zareski*, 2017 IL App (1st) 150836, ¶ 79. We agree with *Zareski* and do not find *Brown* helpful here.

¶ 62    Moreover, even if defendant's claim was cognizable, the trial court considered the merits and denied relief. Specifically, the trial court did not find defendant's testimony that trial counsel never informed him of the sentencing range to be credible. The court found defendant's claim to be belied by the record where the trial court admonished defendant about a second degree instruction and defendant "evinced no surprise or lack of understanding despite the judge not stating the sentencing range." The court further found the testimony of trial counsel Urban to be credible. The court observed that although Urban spoke in generality based on his usual practice rather than his specific memories of defendant's case, it was probable that Urban discussed second degree murder with defendant and informed him of the difference in sentencing. The court reasoned, "Second degree goes hand in hand with the issues in a self-defense case. It is very unlikely a seasoned defense attorney would not discuss it with his client when the defendant

asserts self-defense." The court further found defendant's claim that he would have wanted the second degree instruction to be incredible because the hearing testimony showed that defendant was committed to an "all-or-nothing self-defense theory" and relied on counsel's advice that the jury would likely convict if given a second degree instruction.

¶ 63    Defendant argues that the trial court's credibility findings were manifestly erroneous because the court "should not have credited Urban's testimony" over defendant's testimony. "[T]he post-conviction trial judge is able to observe and hear the witnesses at the evidentiary hearing and, therefore, occupies a 'position of advantage in a search for the truth' which 'is infinitely superior to that of a tribunal where the sole guide is the printed record.' " *Coleman*, 183 Ill. 2d at 384 (1998) (quoting *Johnson v. Fulkerson*, 12 Ill. 2d 69, 75 (1957)). As previously observed, when the circuit court holds an evidentiary hearing to consider new evidence and weigh witness credibility, the court's judgment will not be disturbed absent manifest error. *People v. Morgan*, 212 Ill.2d 148, 155 (2004). Manifest error occurs only when the error is "clearly plain, evident, and indisputable." *Taylor*, 237 Ill. 2d at 373. We conclude that the trial court's findings do not constitute manifest error. The court had the opportunity to observe the testimony of Urban and defendant and make credibility assessments. We do not find the court's credibility determinations to be a clearly plain, evident, and indisputable error.  Accordingly, we affirm the trial court's denial of postconviction relief on this claim.

¶ 64    Instead of addressing *Zareski*, defendant sets forth a new argument related to the second degree murder instruction. Defendant also contends that trial counsel was ineffective for failing to inform defendant that second degree murder is not a lesser included offense and the decision to include the instruction is not part of an "all-or-nothing" trial strategy. However, section 122-3 of the Post-Conviction Act provides that "[a]ny claim of substantial denial of constitutional

rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2016). The supreme court has repeatedly held that this court may not reach arguments not presented in a defendant's postconviction petition. See *People v. Petrenko*, 237 Ill. 2d 490, 502 (2010); *People v. Jones*, 213 Ill. 2d 498, 505 (2004).

¶ 65     Defendant admits that his postconviction counsel did not raise this argument during postconviction proceedings, but argues that postconviction counsel provided unreasonable assistance for failing to advance this argument. The right to counsel in postconviction proceedings is statutory as provided in the Post-Conviction Act, not a constitutional right. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). Further, "a defendant in postconviction proceedings is entitled to only a 'reasonable' level of assistance, which is less than that afforded by the federal or state constitutions." *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). Rule 651(c) provides that postconviction counsel file a certificate stating that he or she (1) consulted with the defendant to ascertain his contentions of deprivation of constitutional right, (2) examined the record of the proceedings at the trial, and (3) amended the defendant's *pro se* petition, if necessary, to ensure that defendant's contentions are adequately presented. Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013).

¶ 66     "Fulfillment of the third obligation under Rule 651(c) does not require postconviction counsel to advance frivolous or spurious claims on defendant's behalf. If amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of the rule." *People v. Greer*, 212 Ill. 2d 192, 205 (2004). The supreme court has "repeatedly held that the purpose of Rule 651(c) is to ensure that counsel shapes the petitioner's claims into proper legal form and presents those claims to the court." *Perkins*, 229 Ill. 2d at 43-44 (citing *People v. Pinkonsly*, 207 Ill. 2d 555, 568 (2003), quoting

28

*People v. Owens*, 139 Ill. 2d 351, 364-65 (1990)). "The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that post-conviction counsel provided reasonable assistance." *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. "It is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c)." *Id.*

¶ 67   Here, postconviction counsel filed her Rule 651(c) certificate after filing her supplemental postconviction petition in which counsel raised the allegations of ineffective assistance of trial counsel. As discussed, postconviction counsel argued that defendant's trial counsel was ineffective for failing to properly advise defendant regarding the sentencing range for second degree murder as well as the previously considered claim regarding the forcible felony instruction. Postconviction counsel was under no obligation to file this supplemental petition, nor was she required to raise the argument defendant asserts now. As the supreme court has observed, " 'post conviction counsel is only required to investigate and properly present the *petitioner's* claims.' " (Emphasis in original.) *Pendleton*, 223 Ill. 2d at 472 (quoting *People v. Davis*, 156 Ill. 2d 149, 164 (1993)). "Rule 651(c) only requires postconviction counsel to examine as much of the record 'as is necessary to adequately present and support those constitutional claims raised by the petitioner.' " *Id.* at 475 (quoting *Davis*, 156 Ill. 2d at 164).

¶ 68   Since postconviction counsel filed her Rule 651(c) certificate, a rebuttable presumption arose that she provided reasonable assistance. Defendant has not offered any argument to rebut this presumption. The purpose of Rule 651(c) is to ensure that counsel shapes defendant's claims into proper legal form and presents those claims to the court. *Perkins*, 229 Ill. 2d at 43-44. A postconviction petitioner is "not entitled to the advocacy of counsel for purposes of exploration, investigation and formulation of potential claims." *Davis*, 156 Ill. 2d at 163. Postconviction

counsel fully complied with Rule 651(c) and presented supplemental claims on defendant's behalf. Thus, defendant received reasonable assistance by postconviction counsel, and his new argument raised for the first time on appeal has been forfeited.

¶ 69    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 70    Affirmed.