THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRENCE SPARKS, Defendant-Appellant.

First District (6th Division)    No. 1—08—0955

Opinion filed August 14, 2009.

Patricia Unsinn and Peter Sgro, both of State Appellate Defender's Office, of Chicago, for appellant.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald and Peter Fischer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McBRIDE delivered the opinion of the court:

Defendant, Terrence Sparks, appeals from the first-stage dismissal of his postconviction petition, arguing that the trial court erred in finding the petition to be frivolous and patently without merit because he raised the gist of a meritorious claim. Specifically, defendant asserts that (1) he properly alleged a claim of actual innocence and a violation of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), where he attached the affidavit of an eyewitness who supported defendant's trial testimony of self-defense; (2) his confrontation rights were violated when a medical examiner testified to the facts and findings of an autopsy report of the victim that was prepared by another medical examiner who did not testify at trial; and (3) the $105 fine assessed by the trial court for the filing of a frivolous postconviction petition violated defendant's rights to due process and equal protection.

As this is defendant's second appeal, we shall only discuss the facts as relevant to defendant's postconviction petition. A detailed discussion of defendant's trial can be found in his direct appeal. *People v. Sparks*, No. 1—04—3288 (December 11, 2006) (unpublished order under Supreme Court Rule 23).

Following a November 2003 jury trial, defendant was convicted of the first-degree murder of Maurice Fowler. Israel Medina testified at trial that in the early hours of January 26, 2002, he and Fowler were eating food on Medina's porch, located at 1406 North Kildare in Chicago. While they were there, Medina heard a car pull up and a door slam across the street, near a big apartment building located at 4258 West Hirsch.

Medina and Fowler walked to the grocery store at the corner of Hirsch and Kildare and looked to see who was yelling, but they did not see anyone. They turned and started to walk back to Medina's house. When they reached the front gate, they heard yelling again. They turned and saw the same person yelling across the street. The person was yelling, "What's up?" in their direction. Fowler called out, "Who is that?" The person repeated, "Who is that?" back to Fowler. At that point, Fowler crossed the street and Medina followed.

Medina stated that they crossed the street because they thought the person yelling might be one of their friends. When they crossed the street, Medina got within two feet of this person, whom he identified as defendant. Medina said that defendant was wearing a black pea coat, dark gray pants, and a gray sweatband with a Nike symbol on it.

When they got close to defendant, defendant started to say, "What's up?" again. Medina realized he did not know defendant and had never seen him before that night. Medina asked Fowler if he knew defendant and Fowler stated that he did not. Medina told defendant, "Man, my fault, you know. I thought we knew you." Medina then started to step back from defendant. Medina then tripped on a broken piece of sidewalk and fell backwards. At that moment, defendant pulled a gun out of his coat pocket and fired.

Neither Medina nor Fowler was hit by the first shot. Medina got up and ran to hide behind a car. Defendant fired a second shot as Medina ran to hide. He turned back and saw Fowler standing with his hands up in the air. Defendant started to walk toward Fowler and Fowler began to back up. Fowler then tripped over a small chain-link fence and fell onto his back. Medina saw defendant hit Fowler in the face with the gun. Fowler had his hands up to block defendant. Defendant then stood up and fired a shot into Fowler. Medina saw Fowler's hands fall to his sides. He saw defendant fire two more shots into Fowler. Defendant looked around and then walked into the apartment building.

Defendant, testifying on his own behalf, described different circumstances. He arrived at 4258 West Hirsch at 4 a.m. He parked the car in front of the building and started to walk toward the building door. He then noticed two men coming toward him.

Defendant said he did not know the two men who approached him. He stated that one of the men was wearing a black, hooded sweatshirt and had his hands in the pocket. That man ordered defendant to take his hands out of his pocket. The other man was just standing next to him. The man in the sweatshirt then demanded that defendant give him his keys. Defendant did not know if he meant house keys or car keys.

Defendant then saw that the man with the hooded sweatshirt had a gun. Defendant rushed him. The man tripped over a chain. Both men fell over and started fighting for the gun. Defendant did not pay attention to the second man. Defendant said both of his hands were on the gun. Defendant does not know how many times the gun went off. After the gunshots stopped, defendant dropped the gun and ran to his apartment.

On cross-examination, defendant said he did not remember everything that happened. He did not know if the other man was shot after the first gunshot was fired. Defendant stated that the gunshots were all fired in rapid succession. Defendant admitted that he did not call the police after the shooting to report the attempted robbery and struggle. Defendant said he left the gun at the scene when he left.

Dr. Edmond Donoghue testified that he is the chief medical examiner for Cook County. He stated that he did not perform the autopsy on Fowler, but he read and is familiar with the case file. The medical examiner who performed the autopsy was no longer employed with Cook County.

There were four gunshot wounds to Fowler. The first wound was an entrance wound in the left lower abdomen involving the small intestine and the inferior vena cava, which is the largest vein in the body, and the left iliac artery, which is a large blood vessel. A deformed, medium-caliber copper bullet was recovered from the muscle of the left lower back, just above the left buttock. This wound caused massive bleeding and coursed from front to back and slightly downward. The second wound was a gunshot entrance wound to the left lower back which exited the body on the left upper quadrant of the abdomen. The third wound entered the back of the hand and exited the palm. The final gunshot wound was through the base of the left thumb.

There was no evidence of close-range firing for any of these wounds. Close-range firing is less than 18 inches away. The victim's stomach was empty. The toxicological tests showed no signs of drugs, but the victim's blood-alcohol level was just below twice the legal limit. His wounds were consistent with someone on the ground with his hands in the air and being shot from above. It is possible that one of the bullets traversed the hands and entered the body, making it consistent with three gunshots. There was nothing in the report indicating any bruises or lacerations on the head, but it is possible that an individual could be struck right before he died and there would be no bruises. Dr. Donoghue stated that the cause of death was multiple gunshot wounds and that manner of death was a homicide.

On direct appeal, defendant contended that the trial court improperly allowed testimony regarding Israel Medina's prior consistent statements to the police, which served to bolster Medina's credibility and denied defendant a fair and impartial trial; and the State engaged in prosecutorial misconduct during closing and rebuttal arguments by implying that defendant and his trial counsel fabricated his defense and commenting on defendant's invocation of his right to remain silent. This court affirmed defendant's conviction and sentence. See *People v. Sparks*, No. 1—04—3288 (December 11, 2006) (unpublished order under Supreme Court Rule 23).

On September 11, 2007, defendant mailed his *pro se* postconviction petition. Two weeks later on September 28, 2007, defendant mailed a supplement to his petition to the circuit court. Defendant raised multiple claims in his petitions, including a violation of his

confrontation rights when Dr. Donoghue testified about Fowler's autopsy report that was prepared by a different medical examiner, and his trial and appellate counsel were ineffective for failing to object to this violation; and the State improperly withheld evidence of defendant's innocence when it failed to disclose an occurrence witness who told police that she witnessed the shooting and saw Medina and Fowler attempt to rob defendant.

On November 16, 2007, the trial court dismissed defendant's *pro se* postconviction petition, finding it to be frivolous and patently without merit and that "there is no basis whatsoever for any of these claims." The trial court listed the different issues raised by defendant in his petition, but the list did not mention defendant's claims of actual innocence and a *Brady* violation based on the affidavit of an occurrence witness. The trial court also assessed defendant $105 in filing fees and court costs pursuant to section 22—105 of the Code of Civil Procedure (735 ILCS 5/22—105 (West 2006)) in the amounts prescribed under section 27.2a of the Illinois Clerks of Courts Act (705 ILCS 105/27.2a (West 2006)).

This appeal followed.

On appeal, defendant argues that the trial court erred in dismissing his *pro se* postconviction petition as frivolous and patently without merit because he stated the gist of a meritorious claim of (1) actual innocence and a *Brady* violation by including an affidavit of an occurrence witness that supports defendant's testimony of self-defense; and (2) a violation of his confrontation rights when a medical examiner testified about the findings of Fowler's autopsy report, which was prepared by a different medical examiner who did not testify. Defendant also contends that the trial court's assessment of $105 in filing fees and court costs violated his rights to due process and equal protection.

The Illinois Post-Conviction Hearing Act (Post-Conviction Act) (725 ILCS 5/122—1 through 122—8 (West 2004)) provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. 725 ILCS 5/122—1(a) (West 2004); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is limited to constitutional deprivations which occurred at the original trial. *Coleman*, 183 Ill. 2d at 380. "A proceeding brought under the [Post-Conviction Act] is not an appeal of a defendant's underlying judgment. Rather, it is a collateral attack on the judgment." *People v. Evans*, 186 Ill. 2d 83, 89 (1999). "The purpose of [a postconviction] proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were

not, and could not have been, determined on direct appeal." *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). The standard of review for dismissal of a postconviction petition is *de novo*. *Coleman*, 183 Ill. 2d at 389.

At the first stage, the circuit court must independently review the postconviction petition within 90 days of its filing and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122—2.1(a)(2) (West 2002). If the court determines that the petition is either frivolous or patently without merit, the court must dismiss the petition in a written order. 725 ILCS 5/122—2.1(a)(2) (West 2002).

At the dismissal stage of a postconviction proceeding, the trial court is concerned merely with determining whether the petition's allegations sufficiently demonstrate a constitutional infirmity that would necessitate relief under the Act. *People v. Coleman*, 183 Ill. 2d 366, 380 (1998). In order to avoid dismissal under section 122—2.1(a)(2), a *pro se* petitioner merely needs to present the gist of a constitutional claim that would provide relief under the Act. *People v. Porter*, 122 Ill. 2d 64, 74 (1988). At this stage, the circuit court is not permitted to engage in any fact-finding or credibility determinations, as all well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true. *Coleman*, 183 Ill. 2d at 385. The "gist" standard is a low threshold. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). To set forth the "gist" of a constitutional claim, the postconviction petition need only present a limited amount of detail and hence need not set forth the claim in its entirety. Further, the petition need not include legal arguments or citations to legal authority. *Edwards*, 197 Ill. 2d at 244. *Pro se* petitioners are not required to present a full and complete pleading. See *Edwards*, 197 Ill. 2d at 244 (rejecting use of the "sufficient facts" test to determine whether a *pro se* petitioner has properly pled a constitutional claim).

The Illinois Supreme Court recently clarified what constitutes a frivolous and patently without merit *pro se* postconviction petition in *People v. Hodges*, 234 Ill. 2d 1 (2009). There, the supreme court held that "a *pro se* petition seeking postconviction relief under the Act for a denial of constitutional rights may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 11-12. "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation. An example of an indisputably meritless legal theory is one which is completely contradicted by the record. See, *e.g.*, *People v. Robinson*, 217 Ill. 2d 43 (2005) (rejecting claim that appellate counsel was

ineffective for failing to argue on direct appeal that out-of-court identification of defendant was inadmissible hearsay, where record showed that the statement at issue fell within the hearsay exception for spontaneous declarations). Fanciful factual allegations include those which are fantastic or delusional." *Hodges*, 234 Ill. 2d at 16-17.

If the circuit court does not dismiss the postconviction petition as frivolous or patently without merit, then the petition advances to the second stage. Counsel is appointed to represent the defendant, if necessary (725 ILCS 5/122—4 (West 2002)), and the State is allowed to file responsive pleadings (725 ILCS 5/122—5 (West 2002)). At this stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. See *Coleman*, 183 Ill. 2d at 381. If no such showing is made, the petition is dismissed. If, however, a substantial showing of a constitutional violation is set forth, then the petition is advanced to the third stage, where the circuit court conducts an evidentiary hearing. 725 ILCS 5/122—6 (West 2002).

First, defendant asserts that he set forth the gist of a meritorious claim of actual innocence based on the newly discovered evidence of an occurrence witness. Defendant further argues that the State failed to turn over this potentially exculpatory evidence. "The question before us is whether defendant's petition had no arguable basis either in law or in fact, *i.e.*, whether it was based on an indisputably meritless legal theory or a fanciful factual allegation." *Hodges*, 234 Ill. 2d at 17.

In an affidavit attached to defendant's *pro se* supplemental postconviction petition, Kashandra Daniels stated that on January 25, 2002, she lived at 4258 West Hirsch in Chicago. She was dropped off at 3:30 a.m. by her boyfriend. She was standing in the foyer of the building when she noticed a man she now knows as defendant walking toward the outer door of the complex. Before defendant reached the door, two men walked up to defendant and pulled a gun on defendant. While Daniels did not know defendant at the time, she did know Fowler and "his side-kick Israel." She stated that "[b]oth of them were well known to be worth watching, since [Fowler] was not very bright and Israel did all of the thinking for him." She saw Fowler pull the gun out and then observed defendant "attack" Fowler while Medina "started backing away from the tussle." She heard a shot, and then what sounded like two or three more shots. Daniels then ran to the inner door of her building and went to her apartment.

The next thing Daniels knew "there were police all over the place asking questions." Daniels stated that she told the officer who was in front of her building what she witnessed "about an hour or so after

the shooting." She said she told the officer that the man had a girlfriend that lived in the building and she had seen him coming and going in the building for several months, but did not know his name. The officer took her name and told her to wait and speak with a plainclothes detective. She saw Medina speaking with a plainclothes officer. After waiting for about an hour, Daniels spoke with a white detective "who had stripe [*sic*] and everyone called him Sarge." He took her name and said he would contact her again. Daniels stated that Medina later told her that he saw her come home and knew that she had seen what happened because he looked right at her in the foyer between the two doors. After the police left, Medina told Daniels that she "had better keep [her] mouth shut." Daniels said she did, but when she heard Medina "got locked up," she told defendant's girlfriend what she saw. Defendant's girlfriend asked her to write it down and sign it with a notary. Daniels concluded by stating that "I know what I saw and I swear this is the truth. I could not come forth sooner because I knew Israel would try to hurt me."

We cannot say that defendant's petition failed to set forth a sufficient factual basis for a claim of actual innocence based on newly discovered evidence. The allegations presented in Daniels' affidavit are neither fantastic nor delusional. Any challenge as to Daniels' credibility is premature. See *Coleman*, 183 Ill. 2d at 385 (holding that we are to assume all well-pleaded facts are true). "Moreover, a belief that allegations are unlikely, without more, is insufficient to justify dismissing a petition." *Hodges*, 234 Ill. 2d at 19, citing *Denton v. Hernandez*, 504 U.S. 25, 33, 118 L. Ed. 2d 340, 350, 112 S. Ct. 1728, 1733-34 (1992).

Next, we consider whether defendant's postconviction petition lacks an arguable legal basis. Defendant asserts that Daniels' affidavit presents newly discovered evidence because her account could not have been discovered earlier when the State did not disclose her name as a witness and Daniels was threatened by Medina not to come forward. Further, defendant maintains that Daniels' testimony would have corroborated his self-defense claim.

In *People v. Washington*, 171 Ill. 2d 475, 489 (1996), the supreme court held that a postconviction petitioner may pursue a claim of actual innocence based on newly discovered evidence. To succeed under that theory, the supporting evidence must be new, material, and noncumulative, and it must be of such conclusive character that it would probably change the result on retrial. *Washington*, 171 Ill. 2d at 489. Newly discovered evidence must be evidence that was not available at defendant's trial and that the defendant could not have discovered sooner through diligence. *Barrow*, 195 Ill. 2d at 541.

"Claiming evidence is cumulative involves a determination that such evidence adds nothing to what is already before the jury." *People v. Molstad*, 101 Ill. 2d 128, 135 (1984).

The State argues that it is impossible for defendant to show that Daniels' testimony was newly discovered evidence "since the fact that there was another eyewitness to this incident certainly was information that defendant could have supplied to his lawyer." The State attempts to refute Daniels' story by making a series of credibility determinations. The State speculates that defendant saw Daniels, as it was "impossible" for him not to have seen her. The State also points out that Daniels' story does not "square" with the evidence at trial because Medina never mentioned seeing her during the crime. This last argument is unpersuasive because Medina would have no logical reason to identify Daniels as a witness if her story could have implicated Medina as an offender.

The State also asserts that Daniels' testimony would have been cumulative because defendant testified that he acted in self-defense when Fowler and Medina initiated the attack. We find this reasoning by the State to be flawed because Medina and defendant presented conflicting versions about the incident and Daniels was an uninvolved witness that supported defendant's testimony. The State also contends that Daniels' testimony would not have affected the outcome. We disagree. At trial, the jury was presented with two different explanations of the incident from Medina and defendant with each one saying the other side was the aggressor. If Daniels' testimony had been consistent with defendant's version of events, then it is conceivable that the jury could have acquitted defendant.

Moreover, the transcript of the trial court's dismissal of defendant's petition concerns us. In the record, the trial court listed the allegations raised by defendant in his *pro se* postconviction petition and supplemental petition before concluding that "there [was] no basis whatsoever for any of these claims," but failed to include this issue in the list. This omission makes it unclear whether the trial court fully considered defendant's claim of actual innocence based on an attached affidavit of a potential occurrence witness before dismissing the petition as frivolous and patently without merit.

After considering the requirements placed on defendant at the first stage of the postconviction proceedings, we conclude that defendant's legal theory is not indisputably meritless as to lack an arguable basis in law. Defendant has presented some evidence to support a legal theory of actual innocence based on newly discovered evidence. It is at least arguable that Daniels' affidavit of her witnessing the incident is new, material, noncumulative and could have

changed the result of defendant's trial. Accordingly, we find that defendant has sufficiently alleged a claim of actual innocence that is arguable on its merits. However, we make no finding as to whether defendant's claim merits a third-stage evidentiary hearing.

Since we have found that defendant's claim of actual innocence does not lack an arguable basis either in law or in fact, the trial court should not have dismissed defendant's postconviction petition as frivolous and patently without merit. Additionally, we need not address defendant's remaining allegations raised on appeal regarding a *Brady* violation and violation of his confrontation rights under *Crawford* because our supreme court has held that partial summary dismissals are not permitted under the Act at the first stage of postconviction proceedings. *People v. Rivera*, 198 Ill. 2d 364, 374 (2001).

Finally, defendant asks this court to vacate the $105 assessed to defendant for filing fees and court costs because it violates his constitutional rights to due process and equal protection. Following its dismissal of defendant's *pro se* postconviction petition, the trial court assessed defendant court costs and fees under section 22—105 of the Code of Civil Procedure (Code) (735 ILCS 5/22—105 (West 2006)); specifically, a $90 fee for filing a postconviction petition later than 30 days after the final judgment, and $15 for requiring the clerk to mail the petition pursuant to section 27.2a of the Illinois Clerks of Courts Act (705 ILCS 105/27.2a (West 2006)).

Section 22—105(a) provides, in relevant part:

> "If a prisoner confined in an Illinois Department of Corrections facility files a pleading, motion, or other filing which purports to be a legal document in a case seeking post-conviction relief under Article 122 of the Code of Criminal Procedure of 1963 *** or in another action against the State, the Illinois Department of Corrections, or the Prisoner Review Board, or against any of their officers or employees and the Court makes a specific finding that the pleading, motion, or other filing which purports to be a legal document filed by the prisoner is frivolous, the prisoner is responsible for the full payment of filing fees and actual court costs." 735 ILCS 5/22—105(a) (West 2006).

Section 22—105(b) provides five definitions for "frivolous" under this section, and the trial court relied on one of these in assessing the fee, that it lacked an arguable basis either in law or in fact. 735 ILCS 5/22—105(b)(1) (West 2006).

In conjunction with section 22—105:

> "[s]ection 27.2a of the Illinois Clerks of Courts Act, which deals with circuit court fees in counties of 3 million or more, states that a minimum fee of $75 and a maximum fee of $90 is to be charged to those who file

'[p]etition[s] to vacate or modify any final judgement or order of court, except a petition to modify, terminate, or enforce a judgment or order for child or spousal support or to modify, suspend, or terminate an order for withholding, if filed later than 30 days after the entry of the judgment or order.' 705 ILCS 105/27.2a(g)(2) (West 2004)." *People v. Gale*, 376 Ill. App. 3d 344, 356 (2007).

"The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature." *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006). "The best evidence of legislative intent is the language of the statute, and when possible, the court should interpret the language of a statute according to its plain and ordinary meaning." *In re Donald A.G.*, 221 Ill. 2d at 246.

Defendant challenges the assessment of the fees and costs as a violation of his due process and equal protection rights. However, we do not need to reach the constitutional question. Since section 22—105(a) only applies to frivolous filings and we have already concluded that defendant's claims regarding actual innocence and a *Brady* violation sufficiently present the gist of constitutional claims to avoid a dismissal as frivolous and patently without merit, our finding negates the assessment of the fees. Therefore, we vacate the trial court's assessment of $105 in filing fees and court costs.

Based on the foregoing reasons, the trial court's dismissal of defendant's postconviction petition is reversed and remanded for further proceedings consistent with this order, and the assessment of $105 in filing fees and court costs is vacated.

Reversed in part and vacated in part; cause remanded.

CAHILL, P.J., and J. GORDON, J., concur.