2022 IL App (1st) 210097-U

FIFTH DIVISION
August 5, 2022

No. 1-21-0097

**NOTICE**:  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 99 CR 3090 |
| | ) | |
| JAMES SCOTT, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Cunningham and Connors in the judgment.

**ORDER**

*Held*:  We affirm the circuit court's dismissal of defendant's postconviction petition at the second stage because his petition does not allege sufficient facts to establish prejudice for his ineffective assistance of counsel claim.

¶ 1     Defendant James Scott appeals from the circuit court's dismissal of his *pro se* petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2006)) at the second stage, arguing that his petition made a substantial showing that his trial counsel was ineffective for withholding recantation evidence from defendant before his guilty plea. We affirm.

¶ 2                                    Background

¶ 3      The facts underlying defendant's case were relayed in three previous orders of this court,

*People v. Scott*, 367 Ill. App. 3d 1094 (2006) (unpublished order under Illinois Supreme Court

Rule 23) (*Scott I*); *People v. Scott*, 397 Ill. App. 3d 1108 (2010) (unpublished order under Illinois

Supreme Court Rule 23) (*Scott II*); and *People v. Scott*, 2016 IL App (1st) 133101-U (*Scott III*).

Accordingly, we include below only those facts necessary for resolving defendant's current claim.

¶ 4      This case arises from defendant's plea agreement in two simultaneously pending first

degree murder trials, the first of which, case No. 99 CR 3092, went to trial in January 2004. In

case No. 99 CR 3092, defendant was charged with the first degree murder of Chicago police officer

John Knight and attempt first degree murder of Chicago police officer James Butler. In defendant's

second case, No. 99 CR 3090, the one at issue here, defendant and Laward Cooper were charged

with the first degree murder of victim Lorenzo Aldridge. During pretrial proceedings in the

Aldridge matter, the circuit court denied defendant's motion to suppress his statement.

¶ 5      On January 27, 2004, the jury in the Knight matter found defendant guilty of first degree

murder and attempt first degree murder. The matter moved to the death penalty sentencing phase.

The next day, January 28, 2004, the State represented that "defense counsel approached us about

a possible resolution to both this matter and the murder of" Aldridge. The parties reached a plea

agreement in which defendant would plead guilty in the Aldridge matter in exchange for sentences

of natural life in prison in both matters. The agreement contained a provision barring defendant

from filing any appeal or postconviction petition in either case.

¶ 6      During the plea hearing, the circuit court advised defendant in relevant part that he waived

his appeal rights and the right to file postconviction petitions. Defendant responded that he

understood. For the factual basis in the Aldridge matter, the State represented that defendant

confessed to the shooting in a statement, and Terrence Battle and Lila Porter would both testify that they heard defendant admit to the shooting. The State would also introduce evidence that defendant and Cooper used 9-mm firearms, and seven bullets recovered from Aldridge's body were 9-mm caliber. The court sentenced defendant to natural life without parole based on the plea agreement.

¶ 7    On January 29, 2004, the following day, defendant sent a letter to the circuit court judge requesting "help" to "take back" his plea agreement. Subsequently, defendant filed multiple motions to withdraw his guilty plea, initially *pro se*, and later via appointed counsel. Counsel's motion emphasized that defendant's trial attorneys coerced him into accepting the plea agreement.

¶ 8    On May 17, 2004, the circuit court heard argument regarding the motion to withdraw plea. Mary Clements, an employee of Cook County Public Defender's office, testified that she interviewed witnesses in connection with defendant's cases, but could not remember the witness' names. Defendant also testified at the hearing, and did not mention Battle or Porter. The court denied the motion, finding defendant "was not coerced" and instead "acted voluntarily."

¶ 9    Defendant appealed in both matters. In *Scott I*, this court consolidated the appeals, then affirmed the circuit court in both matters after permitting appellate counsel to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). *Scott I*, slip order at 12.

¶ 10    On April 2, 2007, defendant filed a postconviction petition captioned under the Knight matter only. The petition raised claims only relating to the Knight matter, and did not discuss the Aldridge matter. The circuit court summarily dismissed the petition, and defendant appealed.

¶ 11    On December 31, 2007, defendant filed another postconviction petition, this one captioned under both case numbers. In relevant part, defendant pursued claims of actual innocence and ineffective assistance of counsel in the Aldridge matter. He alleged that his counsel withheld

recantation affidavits from Battle and Porter until after defendant entered his plea, and had he known of the affidavits, he would not have pleaded guilty. Defendant further argued that another witness, Ralph Fonville,[1] gave a statement that contradicted defendant's confession, but his trial counsel did not discuss this with him. He wrote to trial counsel to obtain the affidavits, but counsel refused to provide them. Defendant attached a letter dated August 26, 2004, addressed to his trial counsel, containing the request. The petition also raised claims regarding the Knight matter. The circuit court dismissed the second petition, characterizing it as a successive petition and finding that the allegations "failed to pass the cause and prejudice test."

¶ 12    Defendant appealed, and this court consolidated the matter with the appeal of his April 2007 petition. On appeal, defendant argued in relevant part that the second petition was not successive. In *Scott II*, this court remanded for further proceedings on the Aldridge matter only. *Scott II*, slip order at 15. The court did not address whether the December 2007 petition was a successive petition; instead, it remanded because defendant raised an actual innocence claim, for which a defendant need not show cause and prejudice, citing *People v. Ortiz*, 235 Ill. 2d 319, 330-31 (2009). Furthermore, because that claim satisfied the first stage postconviction review requirements, the court remanded all claims from the Aldridge matter for second stage review because partial dismissal at the first stage is improper, citing *People v. Sparks*, 393 Ill. App. 3d 878, 887 (2009). In so finding, the court did not determine whether defendant's ineffective assistance claim in the Aldridge matter survived the cause and prejudice test. In explaining why the actual innocence claim had an arguable legal basis, the court wrote, "Even if the defendant did not succeed in suppressing his confession, without any physical evidence to support it, the

---

[1] Because Ralph and Rita Fonville, another witness, share a last name, we will refer to them by their first names.

confession may have proved insufficient for the jury to find him guilty." *Scott II*, slip order at 13. The court also ruled that the plea agreement provision under which defendant waived his right to file postconviction petitions would be unenforceable if he proved his ineffective assistance claim, and thus did not bar the petition at this stage.

¶ 13    On remand, at a proceeding on July 20, 2011, defendant's appointed postconviction counsel indicated he was "working with an investigator to locate the individuals whose affidavits in effect were what the [a]ppellate [c]ourt relied on in ordering the remand." At another proceeding on December 13, 2012, defense counsel stated he was "waiting for my investigator to get back to me with some supposed affidavits." On February 21, 2013, counsel relayed that Battle was deceased. The court asked for clarity regarding whether affidavits at one time existed, but were now lost, and the State's attorney responded that there "never were" affidavits, only "a statement from an investigator."

¶ 14    On April 25, 2013, counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), without amending defendant's postconviction petition. In a letter dated April 15, 2013, counsel explained this decision to defendant, stating in relevant part, "the affidavits were never located and attempts to locate the affiants have been fruitless." He also noted he did not seek an affidavit from Clements because Porter allegedly recanted her recantation.

¶ 15    On June 20, 2013, the State moved to dismiss the petition. The State attached to the motion Clements' summaries of her interactions with Battle and Porter, Porter's grand jury testimony, and the handwritten summaries of statements both Battle and Porter gave to the police. These materials appear in the record on appeal.

¶ 16    Porter testified before the grand jury, in relevant part, that approximately a week after Aldridge's death, she overheard Battle and defendant discuss the incident. Defendant initially

denied that he shot Aldridge, but later said, "yeah, okay, I shot him, whatever." Before the shooting, Porter heard defendant express a desire to kill Aldridge for taking "clientele" from defendant. She also testified that she aided Battle in stealing a safe from Cooper's home containing two 9-mm firearms. Porter's statement is consistent with her grand jury testimony.[2]

¶ 17    In Clements' summaries, she relayed that she spoke to Battle, who stated that "at no time did [defendant] or Cooper admit killing" Aldridge. At some point after the shooting, Battle, who liked to "irritate" defendant, said to him "You know you did it," to which he replied, "Yeah Right." Battle did not believe defendant was serious. Battle later told the police otherwise because he was scared and "told them whatever they wanted to hear even if it wasn't true so that he could go home." Similarly, Porter stated she never heard defendant admit to Aldridge's murder, and she only told the police she did at Battle's request.

¶ 18    On August 16, 2013, the circuit court clerk marked as "received" defendant's reply, in which in relevant part he requested to proceed *pro se*.

¶ 19    On August 22, 2013, during argument on the State's motion to dismiss, the State argued that the only reason the *Scott II* court remanded the matter was the potential existence of recantation affidavits, but in actuality the affidavits never existed. Instead, there were only Clements' summaries, and she did not sign an affidavit to confirm authenticity. Counsel further argued that Battle and Porter's statements in the summaries did not constitute actual recantations. Defense counsel rested on defendant's petition. The circuit court granted the State's motion,

---

[2] On the front page of the grand jury transcript, there is a note indicating that Porter read the transcript and it was accurate, purportedly signed by Porter on December 28, 2012. A similar note appears on a copy of Clements' interview with Porter contained in the record, in which she allegedly recants the recantation. We will not consider this evidence because we must not engage in factfinding at the second-stage, and accept as true defendant's allegation that Porter recanted. See *People v. Coleman*, 183 Ill. 2d 366, 390-91 (1998).

finding the summaries did not constitute legitimate recantations, but did not address defendant's request to proceed *pro se*.

¶ 20     Defendant appealed, arguing remand was appropriate because the circuit court did not rule on his request to proceed *pro se*. In *Scott III*, this court remanded for consideration of whether he knowingly and intelligently waived counsel and could thus proceed *pro se*. *Scott III*, 2016 IL App (1st) 133101-U. On remand, the circuit court ultimately granted defendant's request.

¶ 21     On March 7, 2019, the circuit court again granted the State's motion to dismiss, finding in relevant part that "recantations from Battle and Porter would not have offered [defendant] a viable defense." Defendant moved for reconsideration. During proceedings on that motion, the State produced the police retention file, which is included in the record on appeal.

¶ 22     The file contains detailed statements from certain witnesses involved in the Aldridge matter, summarized in detail by officers, though not verbatim. Ralph relayed that Aldridge was in his home for 15 to 20 minutes before the shooting. In a separate summarized account of the incident, Ralph relayed that he was a drug user and had purchased drugs from both defendant and Aldridge before the shooting. He first purchased from defendant, but then began purchasing from Aldridge. On January 4, 1998, Aldridge arrived at Ralph's home in the "early hours," and Ralph heard gunshots moments after Aldridge left. Rita stated that Aldridge arrived around midnight, and she heard noises a "short" time later.

¶ 23     Battle relayed that before the shooting, he heard defendant speculate that Aldridge was cutting into his drug sales. Approximately a week after Aldridge's shooting, in Porter's presence, Battle asked defendant if he was involved. Defendant denied it initially, but then Battle said, "I know you shot [Aldridge]," to which defendant responded "Yeah, I sat in the bushes and waited for him. I waited [until] he came out of the dope house and I shot him in the head." In February

1998, Porter told Battle about a safe in Cooper's home with two firearms in it. Battle stole the safe, which contained two 9-mm firearms.

¶ 24    The retention file also contained a detailed summary of defendant's statement, in which he relayed that he and Cooper were ordered to kill Aldridge by a gang member for whom they sold drugs. At approximately 11:15 pm on January 3, 1998, defendant observed Aldridge's vehicle outside of Ralph's house. He and Cooper walked to defendant's home, changed clothes, then walked back to Ralph's house and waited for Aldridge to leave. Defendant and Cooper both had 9-mm firearms. A "short time" after midnight, Aldridge exited the house, and defendant and Cooper shot him. They placed the firearms in a safe, which Battle later stole.

¶ 25    On January 11, 2021, the circuit court denied defendant's motion to reconsider. This appeal followed.

¶ 26                                   Analysis

¶ 27    On appeal, defendant claims that the circuit court erred by dismissing his postconviction petition at the second stage because he made a substantial showing that his trial counsel was ineffective for not disclosing recantation evidence before his guilty plea.

¶ 28    Before we substantively address the claim, however, we must determine whether the December 2007 petition was successive. The Act only provides for one petition as of right for a particular conviction, and before a defendant may file any successive petitions raising new constitutional claims, the circuit court must grant the defendant leave to do so in instances when the defendant demonstrates cause as to why he did not raise the claim earlier, and prejudice should he not be permitted to pursue the claim. 725 ILCS 5/122-1(f) (West 2006). Actual innocence claims are an exception to the cause and prejudice rule (*Ortiz*, 235 Ill. 2d at 330-31), but the same is not true of constitutional claims like ineffective assistance of counsel, and the Act requires a

defendant to show cause and prejudice for each individual claim before the claim can be advanced to the first stage. See 725 ILCS 5/122-1(f) (West 2006); *People v. Pitsonbarger*, 205 Ill. 2d 444, 463 (2002).

¶ 29     In *Scott II*, the court did not determine whether or not the December 2007 petition was successive before advancing both the actual innocence and ineffective assistance claims to the second stage. *Scott II*, slip order at 13-14. This was improper, because if the December 2007 petition was a successive petition, defendant would have been required to demonstrate cause and prejudice for why he did not raise the ineffective assistance claim in the April 2007 petition before that claim could be advanced to the second stage along with the actual innocence claim. *Pitsonbarger*, 205 Ill. 2d at 463 ("a petitioner must establish cause and prejudice as to each individual claim in a successive petition").

¶ 30     Under the law of the case doctrine, this court has the authority to abandon *Scott II* if required. See *People v. Sutton*, 375 Ill. App. 3d 889, 894 (2007) (reviewing court may reverse its prior ruling in the same litigation if it is "palpably erroneous"). Based on our review of the record, however, we find that this was not an error that requires correction because it is clear the December 2007 petition was the initial postconviction petition regarding the Aldridge matter, not a successive petition. Defendant captioned the April 2007 petition as pertaining only to the Knight matter, and only raised issues regarding that matter therein. He captioned the December 2007 petition as pertaining to both matters, and raised issues in both matters therein, including the ineffective assistance claim at issue here. Defendant's charges in each case arose from distinct incidents against distinct victims, and he has distinct convictions on both cases. The Act permits him one initial petition on each, and the record is clear the December 2007 petition was the first postconviction petition in which he pursued claims regarding the Aldridge matter. 725 ILCS

5/122-1(f) (West 2006). Thus, the claims regarding the Knight matter in the December 2007 petition were successive, but the claims regarding the Aldridge matter were not, and the *Scott II* finding that the Aldridge claims should be advanced to the second stage because the actual innocence claim survived first stage review was appropriate, even if its rationale was not. *Sparks*, 393 Ill. App. 3d at 887.[3]

¶ 31    With this established, we move to the substance of defendant's claim. Initially, the State argues this claim is barred by the plea agreement provision in which defendant waived his right to file postconviction petitions. We disagree, and concur with the *Scott II* court on this issue. There, the court found, and we agree, that this provision would be unenforceable if defendant can establish it was the ineffective assistance of the trial counsel that caused him to enter the plea. *Scott II*, slip order at 14-15. Accordingly, we will consider the merits of defendant's claim.

¶ 32    The Act provides a mechanism for criminal defendants to challenge a conviction on the basis that it violates their state or federal constitutional rights. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). Claims under the Act are reviewed in three stages. *People v. Tate*, 2012 IL 112214, ¶ 9. The circuit court here dismissed defendant's petition at the second stage of review. At the second stage, the circuit court must accept the defendant's well-pleaded allegations as true, and determine whether the petition makes a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35. A defendant makes a substantial showing when he demonstrates he will be entitled to relief if he can prove his allegations at the third-stage evidentiary hearing. *Id.* We review the circuit court's dismissal of a postconviction petition at the second stage *de novo*. *Pendleton*, 223 Ill. 2d at 473.

---

[3] We note that the State did not raise any issue regarding the timeliness of the December 2007 petition during second stage proceedings before the circuit court or on this appeal, and thereby has waived any potential argument on that ground. See *People v. Boclair*, 202 Ill. 2d 89, 101-02 (2002).

¶ 33    Here, defendant's claim is based on ineffective assistance of counsel respecting a guilty plea. "A challenge to a guilty plea alleging ineffective assistance of counsel is subject to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *People v. Hall*, 217 Ill. 2d 324, 335 (2005). Generally, to establish ineffective assistance of counsel, a defendant must demonstrate both that his counsel's conduct was objectively unreasonable, and that this conduct prejudiced the defendant. *Id.* When a defendant's ineffective assistance claim is based on counsel's conduct during a guilty plea, the prejudice analysis requires that a defendant demonstrate not only that he would have pleaded not guilty but for counsel's unreasonable conduct, but also that the defendant "likely would have been successful at trial." *Id.* at 335-36.

¶ 34    To succeed on an ineffective assistance of counsel claim, a defendant must establish both prongs. *People v. Givens*, 237 Ill. 2d 311, 331 (2010). When a defendant cannot establish prejudice, his claim is resolvable on that basis alone, and the reviewing court need not consider whether counsel's conduct was objectively unreasonable. *Id.*

¶ 35    Defendant's allegations center on his trial counsel allegedly withholding Battle and Porter's recantation affidavits from him until after he pleaded guilty in the Aldridge matter, and also not discussing Ralph's statement with him. He argues that had he known of this evidence, he would have pleaded not guilty, and would likely have succeeded at trial based on this evidence. While the record does not demonstrate that the affidavits ever existed, we must at this stage accept that allegation as true. *Domagala*, 2013 IL 113688, ¶ 35. The record does contain summaries from Clements' interviews with individuals purporting to be Battle and Porter, in which each state they did not hear defendant admit to shooting Aldridge. The record also contains the transcript of Porter's grand jury testimony, and detailed summaries of statements by both Battle and Porter, in which they relay that they heard defendant admit he shot Aldridge and also describe the safe theft.

Battle also testified before the grand jury, though this transcript does not appear in the record on appeal. In the factual basis for defendant's guilty plea, the State detailed defendant's statement, which is also summarized in detail in the police retention file. Finally, the police retention file contains summaries of statements from Ralph and Rita, who testified that Aldridge arrived around midnight and stayed for a short time before he left and was shot moments later. Defendant contrasts this with his statement, where he relayed that he saw Aldridge's vehicle outside of Ralph's home at 11:15 p.m.

¶ 36    On this record, we find defendant has not made a substantial showing of ineffective assistance because his petition does not allege sufficient facts to establish prejudice. The evidence against defendant would not have been significantly affected even if Battle and Porter actually testified at trial and recanted, and Ralph testified as to the time disparity. Defendant's confession is not vague and general; it recounts the events of the evening in great detail. The circuit court denied the motion to suppress, and though he could have challenged the statement's validity at trial, its admissibility is not at issue. Moreover, Porter never recanted that she overheard defendant previously threaten to kill Aldridge for infringing on his drug sales, and neither Battle nor Porter recanted their statements regarding the safe theft.

¶ 37    Additionally, and perhaps most importantly here, should Battle and Porter both have recanted on the stand, the State had strong impeachment material—their statements, and in Porter's case given the record here, her grand jury testimony. Given this impeachment material, the relevance and impact of their recantations likely would have been minimized to become almost negligible. Thus, even assuming all of defendant's allegations regarding the recantation affidavits are true, and Battle and Porter would have testified to that affect at trial, defendant still cannot demonstrate he likely would have succeeded at trial. *Hall*, 217 Ill. 2d at 335-36.

¶ 38    Defendant argues the recantations would be enough to sway a jury by emphasizing the *Scott II* court's language that, "Even if the defendant did not succeed in suppressing his confession, without any physical evidence to support it, the confession may have proved insufficient for the jury to find him guilty." *Scott II*, slip order at 13. This analysis by the court, however, is not binding or conclusive on whether defendant could make a substantial showing of prejudice at the second stage. In *Scott II*, the court conducted a first-stage analysis of an actual innocence claim, and did not analyze the full scope of the record, most notably that Battle and Porter would be subject to impeachment. Additionally, the court in *Scott II* did not consider that the recantation evidence did not address the safe theft testimony that connected defendant with the type of firearm used in Aldridge's shooting, or the comments defendant made about Aldridge before the shooting occurred.

¶ 39    Defendant also argues that his prejudice showing is buoyed by the time discrepancy between his and Ralph's accounts of the incident, but this evidence is inconsequential. This is not a difference of days or even hours. At most, there is a 45 minute discrepancy, which does not counter the core details defendant admitted in his statement—he was outside of Ralph's home shortly after midnight, saw Aldridge exit, and then he and Cooper shot Aldridge with 9-mm firearms.

¶ 40    Having found that defendant's petition did not make a substantial showing of prejudice, we need not consider whether counsel's alleged conduct was objectively unreasonable. *Givens*, 237 Ill. 2d at 331.[4]

---

[4] We note that the State discussed the impact of the pending death penalty hearing in the Knight matter on defendant's decision to accept the plea agreement. Because we find that defendant cannot show prejudice for any alleged ineffective assistance of counsel based on the Aldridge record alone, we do not make any statement as to whether it would be appropriate for this court to consider the potential death

¶ 41                                    Conclusion

¶ 42    Defendant's petition did not make a substantial showing of prejudice for his ineffective assistance claim, and accordingly the circuit court did not err by granting the State's motion to dismiss his postconviction petition at the second stage.

¶ 43    Affirmed.

---

penalty exposure in the Knight matter in evaluating defendant's trial counsel's conduct respecting the guilty plea in the Aldridge matter.