2025 IL App (1st) 221286-U

No. 1-22-1286

Order filed May 16, 2025

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 13408 |
| | ) | |
| KRISTOPHER HORTON, | ) | Honorable |
| | ) | Patrick Coughlin, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice Tailor and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's denial of defendant's *pro se* motion for leave to file a successive postconviction petition where defendant did not make a colorable claim of actual innocence based on newly discovered evidence.

¶ 2    Defendant Kristopher Horton appeals from the denial of his *pro se* motion for leave to file a successive petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2022)). On appeal, he asserts the circuit court erred because he set forth a colorable claim of actual innocence based on newly discovered evidence, namely, the affidavit of Tremaine

Johnson, who averred that the victim in Horton's murder case was armed, made a threat to kill, and raised a firearm first. We affirm.

¶ 3    Following a jury trial, Horton was found guilty of first degree murder for the shooting death of Steven Williams (Williams) and sentenced to 75 years' imprisonment. The underlying facts were set forth in the decision on direct appeal and are repeated here briefly. See *People v. Horton*, 2012 IL App (1st) 101980-U.

¶ 4    At trial, the eyewitness testimony of James Holliday, Dasheena Williams (Dasheena), and Daniel Logan established that on April 23, 2006, at around 12:00 a.m., a group of friends were outside "drinking and talking" on Brookline Street in Chicago Heights, Illinois. Some described the gathering as a block party. Fannie May Harris, Horton's aunt, ran over Williams's foot as she was driving down the street through the crowd of people. Williams, also known as "G," confronted Harris at her home, and he and Horton's girlfriend, Ebony Boykins, argued. Williams and Horton then began arguing. Horton said he was going to get his gun and left. About 15 minutes later, Horton pulled into Harris' driveway, walked quickly towards Williams, and shot Williams three times. None of the three eyewitnesses said Williams was armed or pulled a gun on Horton first.

¶ 5    After the shooting, Horton fled to Minnesota, which may be viewed as evidence of consciousness of guilt. On April 27, 2006, at 4:45 p.m., Chicago Heights police officer Tom Rogers interviewed Horton after he was caught in Minnesota. During the interview, Horton confessed:

    "[Williams] was still down there talking on his phone and *** he told them like, man, f***
    this p*** a*** n*** or some s***, you know what I'm saying. *** I'm like, man, *** I'm
    tired of this s***. *** So I walk down there and he standing there ***. So I'm like, now

what, motherf***. *** All that s*** you're talking and saying s*** now. *** [H]e said something. Then, you know what I'm saying, that's when I shot him."

Horton added that Williams continued swearing at him after being shot, so he shot him again.

¶ 6      During his videotaped confession, Horton did not tell the police Williams was armed. Nor did he say Williams threatened him or pulled a gun first. However, at trial, Horton testified that Williams was armed, pulled a gun first, and pointed the gun at his face. Horton said he then grabbed his own gun from his waist and fired "three, four" shots at Williams. The jury found Horton guilty of first degree murder and that he personally discharged a firearm that proximately caused the death of Williams. Horton was sentenced to 75 years' imprisonment. We affirmed on direct appeal. *Horton*, 2012 IL App (1st) 101980-U.

¶ 7      Horton is now on his fourth *pro se* motion for leave to file a successive postconviction petition. This time he alleges actual innocence based on newly discovered evidence premised on Johnson's affidavit.

¶ 8      Johnson avers that on April 22, 2006, he was walking down Brookline Street looking to buy "weed and pills" from "G" (a/k/a Williams) when he heard "G" say to someone on the phone, "he walkin my way now Im goin to kill this b***." The statement stopped Johnson "cold." "G" then drew a firearm and "the other person pull[ed] a gun." Johnson ran. "Shot was fired," and Johnson heard "G" say, "you shot me." Horton argues this was newly discovered evidence that is material, not cumulative, and conclusive.

¶ 9      In a written order entered on June 8, 2022, the circuit court denied leave to file a fourth successive postconviction petition finding Horton failed to establish actual innocence. The court found Johnson's affidavit was cumulative of the evidence at trial, where Horton testified that

Williams was armed. Moreover, the evidence was not conclusive and did not raise the probability that the fact finder would reach a different verdict considering the trial evidence. Specifically, the court pointed to the fact none of the witnesses at trial mentioned Williams was armed and, in a videotaped confession to police, Horton admitted to shooting Williams without mentioning that Williams was armed or had threatened him. This, according to the court, supports the assertion that Horton was the "initial aggressor" and did not act in self-defense.

¶ 10     On appeal, Horton contends the circuit court erred in denying his motion for leave to file his fourth successive postconviction petition where he raised a colorable claim of actual innocence based on Johnson's new affidavit, which asserted that Williams was armed, threatened Horton, and raised a firearm at him first. In making this argument, Horton reads more into the affidavit than there is. While Horton infers from Johnson's affidavit that Williams threatened to kill Horton and pulled a gun on Horton first, Johnson never identifies Horton as the "other person" mentioned in the affidavit or remotely suggests that Horton overheard Williams say he was "goin to kill" him.

¶ 11     The Act allows defendants to challenge their convictions based on an alleged violation of their state or federal constitutional rights. *People v. Jean*, 2024 IL App (1st) 220807, ¶ 28. The Act is not a substitute for an appeal and instead offers "a mechanism for a criminal defendant to assert a collateral attack on a final judgment." *People v. Robinson*, 2020 IL 123849, ¶ 42. Moreover, the Act only contemplates the filing of one petition (725 ILCS 5/122-1(f) (West 2022)) and "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." *People v. Coleman*, 2013 IL 113307, ¶ 81 (quoting 725 ILCS 5/122-3 (West 2022)). This bar is relaxed under two grounds. *Robinson*, 2020 IL 123849, ¶ 42. The first ground applies when a defendant satisfies the cause-and-prejudice test for failure to assert a claim in an earlier

postconviction petition. *Id*. The second ground is applied to avoid "a fundamental miscarriage of justice" when a defendant asserts a claim of actual innocence. *Id*. Here, Horton alleges actual innocence based on newly discovered evidence.

¶ 12    A defendant must obtain leave of court to file a successive postconviction petition premised on actual innocence. *People v. Edwards*, 2012 IL 111711, ¶ 24. Leave to file must be granted when a defendant's documentation raises the probability that "it is more likely than not that no reasonable juror would have convicted [the defendant] in the light of the new evidence." (Internal quotation marks omitted.) *Id*. Leave is denied only where "it is clear, from a review of the successive petition and the supporting documentation provided by the [defendant] that, as a matter of law, the [defendant] cannot set forth a colorable claim of actual innocence." *Id*.

¶ 13    The denial of leave to file a successive postconviction petition alleging actual innocence is reviewed *de novo. Robinson*, 2020 IL 123849, ¶ 40. At the pleading stage, "all well-pleaded allegations in the petition and supporting affidavits that are not positively rebutted by the trial record are to be taken as true" and "the court is precluded from making factual and credibility determinations." *Id*. ¶ 45. To establish actual innocence, evidence must be newly discovered, material and not cumulative, and of such conclusive character that it would probably change the result on retrial. *Id*. ¶ 47. "Newly discovered" means evidence that was discovered "after trial and that the [defendant] could not have discovered earlier through the exercise of due diligence." *Id*. Material evidence is "relevant and probative of the [defendant's] innocence," and noncumulative evidence "adds to the information that the fact finder heard at trial." *Id*. Evidence is conclusive when "considered along with the trial evidence, [it] would probably lead to a different result." *Id*.

¶ 14    Conclusiveness is the most important factor of an actual innocence claim. *Id*. In deciding whether evidence is conclusive, the question is "whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Id*. ¶ 48. Therefore, probability, not certainty, "is the key in considering whether the fact finder would reach a different result" after considering both the prior and new evidence. *Id*. For new evidence to be positively rebutted, it must be "clear from the trial record that no fact finder could ever accept the truth of that evidence, such as where it is affirmatively and incontestably demonstrated to be false or impossible." *Id*. ¶ 60. When the evidence is not of such conclusive character that it would probably change the result on retrial, we need not decide whether it is newly discovered, material, or not cumulative. *People v. Sanders*, 2016 IL 118123, ¶ 47.

¶ 15    After reviewing Johnson's affidavit, we find it is not of such a conclusive character that it would probably change the result on retrial. At trial, three eyewitnesses testified that the shooting occurred around 12:00 a.m. on April 23, 2006, on Brookline Street. They testified that after Horton and Williams argued, Horton said he was going to get a gun and, indeed, left.  When he came back, he had a gun and shot Williams multiple times. Witnesses testified Horton was the aggressor and shot Williams, and Horton's own statements showed that he did not act in self-defense when he fired his gun at Williams. Horton then fled to Minnesota and confessed to the police after being caught. In his confession, Horton did not mention that he shot Williams in self-defense or that Williams was armed and threatened him. In fact, Horton said, when Williams continued swearing at Horton after being shot, Horton shot him again.

¶ 16    Given the above, and taking Johnson's affidavit as true, Horton's new evidence does not place the trial evidence "in a different light" or undermine "the court's confidence in the judgment of guilt" given the overwhelming evidence against Horton, including his own videotaped confession. See *People v. Simpson*, 2015 IL 116512, ¶ 36 (recognizing that a confession is the most powerful piece of evidence the State can offer).

¶ 17    As noted above, Johnson's affidavit does not identify Horton as the person Williams threatened to kill or involved in the altercation. Even if Horton was the person walking up, Johnson does not say that Horton overheard Williams' threat or saw Williams pull a gun first. Regardless, Johnson ran and did not witness the shooting. Johnson said as he ran, "[s]hot was fired," and he heard Williams say, "you shot me." It is unclear from his affidavit whether a shot or multiple shots were fired, and Johnson provides no evidence as to who shot Williams. It is pure speculation to say it was Horton, to say Horton was the "b****" Williams threatened to kill, that Horton was the "other person" that pulled a gun, or that Horton heard Williams' threat to kill. See *People v. Smith*, 2021 IL App (1st) 181178-U (affirming summary dismissal of postconviction petition where witness's testimony did not establish defendant saw a gun, knew victim was armed, or threatened to kill him and, thus, could not have established self-defense).

¶ 18    Yet, even assuming Horton was the "other person" walking up to Williams when Williams pulled a gun, this evidence is cumulative of Horton's testimony that Williams was armed and pointed a gun at him. Horton cannot establish a sufficient claim of actual innocence by alleging the same evidence that the jury heard and rejected. See *People v. Anderson*, 401 Ill. App. 3d 134, 138 (2010) (defendant did not establish actual innocence because the evidence was cumulative of defendant's trial testimony); *People v. Jackson,* 2021 IL App (1st) 190406-U (same).

¶ 19    Horton's cases that stand for the proposition that "[c]orroborative evidence is not the same as cumulative evidence" are distinguishable. First, in *People v. Molstad,* 101 Ill.2d 128 (1984), the defendant's five co-defendants attested that he was not present during the offense, which raised additional questions concerning the verdict. Johnson's affidavit does not. Second, in *People v. Warren,* 2016 IL App (1st) 090884-C, there was new evidence that two men confessed to the murder for which defendant was convicted. The jury had not heard this before, so it would add to the evidence, unlike Johnson's affidavit. Third, *People v. Sparks*, 393 Ill. App. 3d 878, 883 (2009), involves an appeal from the first stage dismissal of an initial postconviction petition, which is a much lower standard than the threshold for filing a fourth successive postconviction petition.

¶ 20    Given the inadequacies of Johnson's affidavit, we do not find it sufficient as a matter of law to establish a colorable claim of actual innocence. The affidavit does not raise anything new or the probability that it is more likely than not that no reasonable juror would have convicted Horton. Nor does it place the trial evidence in a different light or undermine our confidence in the guilty judgment, as the overwhelming evidence shows Horton was the aggressor and did not act in self-defense. See *People v. Harris*, 206 Ill. 2d 293, 301-02 (2002) (supreme court rejected an actual innocence claim based on newly discovered evidence where the State presented overwhelming evidence of defendant's guilt); *People v. Horton*, 2021 IL App (1st) 180551 (we affirmed denial of Horton's motion for leave to file a second successive postconviction petition, which relied on the insufficient, cumulative affidavit of another witness and failed to present a colorable claim of actual innocence based on self-defense).

¶ 21    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 22    Affirmed.